# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00021-CV

### In the Matter of E. A. R., IV

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-28,098, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

E.A.R. pleaded true to the allegation that he engaged in delinquent conduct by committing the offense of evading arrest using a motor vehicle. *See* Tex. Fam. Code Ann. § 51.03 (West Supp. 2009); Tex. Penal Code Ann. § 38.04 (West Supp. 2009). The juvenile court adjudicated him delinquent and placed him on probation to be served at an intermediate sanctions center. The court also ordered E.A.R. to pay $3275 in restitution for damages to the vehicle used in his flight. E.A.R. challenges the restitution order in four points of error. We affirm.

When a juvenile is found to have engaged in delinquent conduct arising from the commission of an offense in which property damage or loss or personal injury occurred, the court may order the child or his parent to make full or partial restitution to the victim of the offense. Tex. Fam. Code Ann. § 54.041(b) (West 2008). Because delinquency proceedings are quasi-criminal in nature, the rules of restitution in criminal cases apply. *In re J.R.*, 907 S.W.2d 107, 109 (Tex. App.—Austin 1995, no writ.). The question of restitution is committed to the court's discretion, but

that discretion is not unlimited. *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999). The amount of restitution must have a factual basis within the victim's loss; the court may not order restitution to anyone but the victim of the offense with which the offender is charged; and the court may not order restitution for an offense for which the defendant is not criminally responsible. *Id*. at 696-97.

The subject of the restitution order in this case was a silver-colored 2000 Chevrolet Cavalier Z24 belonging to Jeassie Claude Burrell. Burrell testified at the restitution hearing that the car was stolen from his residence on July 1, 2008. Burrell said the car had approximately 120,000 miles and was in very good condition when it was stolen. Burrell had purchased the car in 2001 for $12,000, and he testified that the Kelly Blue Book value of the car in a private sale was $3275.

Burrell's car was recovered on July 3, 2008, following a police pursuit. Burrell went to the lot where his car had been taken and found that it had been seriously damaged. He testified, "It's totaled. The frame is bent. The front axle on the left side is broke, so it's totaled." According to Burrell, repairs would cost four times the value of the car. Burrell testified that he had no intention of repairing the car and, so far as he knew, it remained in the possession of the wrecker company.

E.A.R. contends that the evidence is legally and factually insufficient to prove that the car he was driving while evading arrest was Burrell's and that, in any event, the vehicle was not damaged as a result of the offense he was found to have committed. E.A.R. also asserts that the evidence does not support the amount of restitution ordered.

2

By his plea, E.A.R. admitted that on July 3, 2008, he intentionally fled from George Silvio, an Austin police officer who E.A.R. knew was attempting to arrest and detain him, and that he used a motor vehicle in his flight from the officer. The evidence shows that the pursuit ended when E.A.R. drove the vehicle into a fire hydrant. E.A.R.'s mother testified that the vehicle in question was a "little silver car" that had been driven to E.A.R.'s family residence on July 1 or 2 by friends. She testified that these friends offered to sell the car, and they showed her the title, insurance, and keys. She said that these friends left the car at her house because her brother thought he might buy it. No photographs of the vehicle E.A.R. was driving were offered in evidence, nor did the State prove the license plate number or vehicle identification number of the car to demonstrate that it was Burrell's stolen Cavalier.

As previously noted, Burrell's Cavalier was silver, was stolen on July 1, 2008, and was recovered on July 3 following a police pursuit. Burrell saw his car at the lot where it was taken following the police pursuit and saw that the frame had been bent and the front axle broken. In addition to this circumstantial evidence linking Burrell's car to E.A.R.'s conduct, Burrell answered affirmatively when asked, with reference to his stolen car, "[W]hen the Respondent [E.A.R.] was in that pursuit with the police he, in fact, wrecked the vehicle, correct?" Viewing this evidence in the light most favorable to the result, we hold that the court could rationally find beyond a reasonable doubt that the vehicle driven by E.A.R. while he was evading arrest belonged to Burrell. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (legal sufficiency standard of review); *In re E.P.*, 963 S.W.2d 191, 193 (Tex. App.—Austin 1998, no pet.) (sufficiency of evidence in juvenile cases reviewed by standards applied in criminal cases). Point of error two is overruled.

3

Viewing the evidence in a neutral light, the State's evidence regarding the ownership of the vehicle involved in the offense was unquestionably thin. However, there was no evidence suggesting that the vehicle driven by E.A.R. was not Burrell's, and we conclude that the court's determination that Burrell's stolen Cavalier was used by E.A.R. to evade arrest was neither clearly wrong nor against the great weight and preponderance of the available evidence. *See Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (factual sufficiency standard of review). Point of error three is overruled.

E.A.R. contends that regardless of who owned the vehicle, the damage to the car was not caused by his evading arrest. He emphasizes that he was not accused of unlawfully using the vehicle. He urges that if there was a victim of the offense he was found to have committed, it was the officer from whom he fled and not the owner of the vehicle he was driving.

E.A.R. argues by analogy to *In re D.S.*, 921 S.W.2d 860 (Tex. App.—San Antonio 1996, no writ). In that case, a juvenile pleaded true to the allegation that he committed criminal trespass, was adjudicated delinquent, and ordered to pay restitution to the property owner. *Id.* at 861. The court vacated the restitution order because there was no evidence that D.S.'s unlawful entry caused or resulted in the damage for which restitution was ordered. *Id.* The court of appeals held that restitution may be ordered only for property damage or loss that occurs in the commission of the offense for which the accused is convicted. *Id.* *D.S.* is distinguishable from the cause before us because the evidence shows that E.A.R. damaged the car he was driving while evading arrest.

E.A.R. also refers us to the opinion in *Gordon v. State*, 707 S.W.2d 626 (Tex. Crim. App. 1986). In that case, a police officer was prosecuted for violating the civil rights of a prisoner

4

in his custody. *Id*. at 627. The indictment accused the officer of a first degree felony because the prisoner died, but the jury found him guilty of a third degree felony based on the officer pulling the prisoner's hair. *Id*. at 627-28. The court of criminal appeals held that the trial court erred by ordering the officer to reimburse the victim's family for his funeral expenses because the jury had found that the defendant was not guilty of causing the victim's death. *Id*. at 630. *Gordon* is also distinguishable from the cause before us. In this case, the evidence shows that E.A.R. damaged the vehicle he was driving during his flight, and the trial court did not find to the contrary.

This case is more closely analogous to *In re C.T.*, 43 S.W.3d 600 (Tex. App.—Corpus Christi 2001, no pet.). C.T. was adjudicated delinquent for having failed to stop and leave information after she was involved in a multi-vehicle accident, and she was ordered to pay restitution for the damage to one of the vehicles. *Id*. at 601. Citing *D.S.*, C.T. argued that the damages were the result of the accident, not of her failure to stop and leave information. *Id*. at 602-03. The court of appeals rejected this argument, noting that both her involvement in the accident and the damages to the other vehicle were elements of the offense of failing to stop and leave information. *Id*. at 603. Therefore, the damages to the other vehicle were occasioned by and arose out of the offense for which C.T. was adjudicated delinquent. *Id*.

The petition accused E.A.R. of evading arrest and using a vehicle while in flight. The allegation regarding the use of a vehicle elevated the underlying offense from a class B misdemeanor to a state jail felony. *See* Tex. Penal Code Ann. § 38.04(b)(1)(B) (West Supp. 2009).[1] E.A.R. admitted the truth of the allegation. The evidence otherwise shows that E.A.R. damaged the vehicle

---

[1] The relevant portions of the statute were unchanged by the 2009 amendment.

while in flight by driving it into a fire hydrant. The evidence supports the court's finding that the damage to Burrell's car occurred during and as a result of E.A.R.'s evading arrest in the vehicle. Point of error one is overruled.

Finally, E.A.R. contends that the evidence does not support the amount of restitution ordered, $3275. When an offense results in damage to or destruction of the victim's property, the court may order the offender to pay an amount equal to the greater of the value of the property on the date of the damage or destruction or the value of the property on the date of sentencing. Tex. Code Crim. Proc. Ann. art. 42.037(b)(1)(B) (West Supp. 2009). The prosecutor must prove the amount of the victim's loss by a preponderance of the evidence. *Id*. art. 42.037(k). Although the question of restitution is committed to the court's discretion, the amount of restitution ordered must have a factual basis within the victim's loss. *Campbell*, 5 S.W.3d at 696; *see* Tex. Fam. Code Ann. § 54.041(c) (West 2008) (restitution limited to "actual damages").

Burrell testified without contradiction that the frame of his car was bent and the front axle was broken, and that the car was a total loss. When questioned by the State regarding the value of his car when it was stolen, Burrell replied, "I'm not going to try to cheat anybody, it was in very good condition—it was worth to me at least $2,500." The State asked Burrell if he was "aware that the Kelly Blue Book value for this vehicle, for a vehicle in good condition at 120,000 miles in a private sale . . . is actually worth $3,275?" Burrell said that he was.

E.A.R.'s mother testified that the car had "dings" on the door, the interior was "faded," and the air conditioner did not work. E.A.R.'s father, who testified that he had experience repairing cars, testified that the paint "was a bit dull." He said that he was not allowed to get close

to the car following the accident and did not know the extent of the damage to the frame, if any. Asked by E.A.R.'s attorney what the cost of repair would be if the frame was bent and the axle broken, he answered, "I wouldn't know. The only thing that I know is that if an adjuster comes out and he sees that it's totaled and the cost for fixing a vehicle is more than what the vehicle is worth, they're not going to do it for you." He testified that the Blue Book trade-in value of the car was between $575 and $1000, depending on condition.

The trial court, as trier of fact, had the responsibility to weigh the credibility of the witnesses and determine the weight of their testimony. The court obviously found Burrell's testimony to be credible, and that testimony supports the court's restitution order. The court did not abuse its discretion by ordering E.A.R. to pay $3275 in restitution for the destruction of Burrell's automobile that resulted from E.A.R.'s delinquent conduct. Point of error four is overruled.

The juvenile court's judgment is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: November 20, 2009

7